*Masterson & Carroll,* for appellants.

*Carroll & Barbour,* for appellees.

---

JAMESON'S ADMRS. *v.* RICHARDSON.

[Abstract Kentucky Law Reporter, Vol. 7—610.]

**Fraud by False Representations as Defense.**

　　To enable a vendee of real estate to obtain relief against a suit for purchase-money upon the ground of fraudulent representations by the vendor in respect to the property, in addition to allegations and proof that such representations were false they must also be shown to be material, precise and definite, and that they influenced and induced the sale.

APPEAL FROM HART CIRCUIT COURT.

February 2, 1886.

OPINION BY JUDGE LEWIS:

Appellee brought this action against appellants, administrators, widow and heirs at law of B. F. Jameson, deceased, on a note for $500 given by the decedent for the last instalment of the purchase-price of a tract of land sold and conveyed to him, and for an enforcement of his lien.

Appellants in their answer, made a counterclaim, allege that appellee falsely and fraudulently represented to the decedent that there was upon the land a well that did and would furnish water enough for the use of three or four families, which on the contrary did not then and does not now afford enough to supply the wants of one family, and did then and does now go dry at periods, failing to furnish any water; that said representations were known by appellee when made to be false, and were made by him to deceive and defraud the decedent, and he was deceived and defrauded thereby. They further say that the land, if said well had been such as was represented by appellee, would have been worth $1,000 more than it was and now is, and they pray judgment for that amount.

Appellee in his reply denies the allegations of the answer, in respect to the representations as to the well of water, averring the only statements he ever made to the decedent were made several weeks before the sale of the land, and that they were that the well afforded as good water as any well and that it furnished sufficient quantity for the ordinary use of his family at all times except in long continued periods of drought, when it would get very low, but had never gone dry since it had been dug out as a well, and these statements he says were true.

The evidence in relation to the quantity and to some extent the quality of the water in the well is conflicting. But we do not deem it necessary to determine upon which side it preponderates, because there are other essential facts not shown by the evidence, even if they had been stated in the answer and counter-claim.

In order to enable a vendee to either support an action, or to obtain relief upon the ground of fraudulent representations by

58

the vendor in respect to the property, it is not sufficient that they be alleged and proved to be false, but they must be material, precise and definite, and moreover they must have influenced and induced the transaction. A mere misrepresentation by the vendor constitutes neither a cause of action nor defense to an action, unless it was the proximate and immediate cause of the purchase by the vendee.

Only two witnesses introduced by appellants testify in regard to the alleged fraudulent representation by appellee, one of them the brother and the other the sister of the widow of Jameson, and, giving proper and full meaning to their statements, there is a failure to show that Jameson was at all induced by the representations of appellee in relation to the well to purchase the land. From the evidence of Banks, who accompanied Jameson to where appellee was and was present during the negotiations and continued with them until the deed for the land and notes were written by him, it is clear that Jameson had previously made himself acquainted with the land, and had determined to give the price asked by appellee for it, and besides was aware that another person desired to purchase it, and on that account never left appellee until he had closed the trade, the papers being drawn up and the first installment in cash paid at a late hour of the night at the home of appellee, where Jameson and Banks after the terms were agreed on went for that purpose.

It appears that the tract contained a fraction of an acre over one hundred twenty acres, for which Jameson finally agreed to pay $2020.75; and according to Banks the only difference between them was whether appellee should be paid at the rate of $30.00 per acre for the fraction of an acre, and while contending about that appellee said he had already put the land down dirt cheap and that there was a well of water on the place worth half what he asked for it. It is clear that this statement does not amount to anything more than a mere general assertion of opinion of value and falls short of a fraudulent representation, in the meaning of the law and equally clear, that it did not cause Jameson to make the purchase, for he had already determined to do so.

The other witness states substantially that she was, about two weeks before the trade for the land, present in company with Jameson and his wife at the residence of appellee on which oc-

casion appellee spoke of the well as being an attraction of the farm, and as never failing, and that he brought from the well water which he offered to Mrs. Jameson, who refused to take it, being opposed to the purchase, whereupon appellee said to her the well was worth half what he asked for the land. The only conclusion which can be drawn from the testimony of this witness is that Jameson had made himself acquainted with the land and the price appellee asked for it, and was prevented then from purchasing by the opposition of his wife, and the general statement made by appellee about the well, even if it had been made directly to him instead of his wife, did not in the least degree influence and induce the action of Jameson, already decided upon by him, conditioned upon the answer of his wife.

There is evidence showing that Jameson before his death, but several months after he purchased and took possession of the land, expressed himself extremely satisfied with his purchase and stated substantially that he had secured the land for less than its market value. We are satisfied from the evidence that Jameson purchased the land uninfluenced by any fraudulent representation made by appellee in regard to the well, and that appellants are not entitled to recover any part of the amount set up in the counterclaim.

Judgment *affirmed.*

*Wm. Lindsay, Julius R. Curle, for appellants.*

*W. J. Macey, for appellee.*